Civil No. 15-1608 (GAG)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LIONEL RODRÍGUEZ-NEGRÓN, DARLENE J. MATOS-RIVERA, MINOR S.R.M.**<br><br>**Plaintiffs,**<br><br><br>**v.**<br><br>**THE SAN JUAN CHILDREN'S CHOIR,**<br><br>**Defendant.** | **CIVIL NO. 15-1608 (GAG)** |

## OPINION AND ORDER

Lionel O. Rodríguez-Negrón ("Rodríguez-Negrón"), Darlene J. Matos-Rivera ("Matos-Rivera"), and the conjugal partnership comprised between them, and on behalf of their minor daughter, S.R.M. ("Plaintiff S.R.M."), (collectively, "Plaintiffs") filed a complaint alleging disability discrimination against the San Juan Children's Choir ("Defendant" or "Choir"), in violation of Title III of the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 701 *et seq.* (Docket No. 1.) Plaintiffs also invoke the Court's pendent jurisdiction for causes of actions arising under Puerto Rico Law No. 44 of July 2, 1985, P.R. LAWS ANN. tit. 1, §§ 501, *et seq.*, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141-42.

Before the Court is Defendant's motion for summary judgment. (Docket No. 18.) Plaintiffs opposed the motion. (Docket No. 32.) Per leave of the Court, Defendant replied and Plaintiffs sur-

Civil No. 15-1608 (GAG)

replied. (Docket Nos. 44; 49.) After reviewing the parties' submissions and the pertinent law, the Court **GRANTS** Defendant's motion for summary judgment at Docket No. 18.

## I.      Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56 (a). "An issue is genuine if it may reasonably be resolved in favor of either party' at trial, ... and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted) (internal quotation marks omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.Civ. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable

Civil No. 15-1608 (GAG)

inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir.2003)).

## II.   Defendant's Objections to Plaintiffs' Statement of Uncontested Facts

Prior to establishing the relevant factual and procedural background, the Court must first address Defendant's objections to Plaintiffs' opposition at Docket No. 32.  Defendant contends that Plaintiffs' opposition does not comply with Local Rule 56(c) and, therefore requests the motion for summary judgment at Docket No. 19 to be treated as unopposed.  (Docket No. 44.)

A.   Anti-Ferreting Rule

Local Rule 56(c), also known as the anti-ferreting rule, requires an opposing party to admit, deny or qualify the facts of the moving party, and to explain the reasons for denials or qualifications with record citations. Local Rule 56(e) of the Local Rules of this Court states that:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

L. Cv. R. 56(e) (D.P.R. 2009). "A party opposing a motion for summary judgment must submit a counter-statement, which shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation. [L. Cv. R. 56(c) (D.P.R. 2009)]." P.R. Am.

Civil No. 15-1608 (GAG)

Co. V. Rivera-Vázquez, 603 F.3d 125, 131 (1st Cir. 2010) (internal quotation marks omitted); see also Montalvo Febus v. Sánchez, No. 11-1428 (GAG), 2013 WL 6628299, at *2 (D.P.R. Dec. 16, 2013).

The vast majority of Plaintiffs' opposing statements do not cite record evidence in support of their assertions, as mandated by Local Rule 56. The statement of facts that are relevant to Plaintiffs' causes of action are included in the upcoming factual background section, yet Defendants' statements that were improperly contested will be deemed admitted. See L. Civ. 56(e).

B. Sham Affidavit Doctrine

Irrespective of the above, Plaintiffs' opposition raises yet another issue. In support of their opposition, Plaintiffs provide two unsworn statements under penalty of perjury signed April, 2015, after Defendant moves for summary judgment. (Docket Nos. 33-7; 33-8.) Defendant move the Court to disregard these post- summary judgment documents, claiming that they are sham affidavits intended "to create a triable issue of fact to resist summary judgment." (Docket No. 44 at 3.)

The First Circuit has held that "[w]here a party has given clear answers to unambiguous questions in discovery, that party cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a *satisfactory explanation* of why the testimony [has] changed." Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380, 386 (1st Cir. 2016) (citing Hernandez–Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000) (internal quotation marks omitted) (emphasis added)). Plaintiffs do not provide a reasonable justification for the change in testimony and the post-discovery filing, nor do the documents themselves contain any information as to why they were submitted post-discovery. Moreover, these unsworn statements contain self-serving allegations not properly supported by the record. In the factual background section, the Court strikes several parts of these documents because a "[p]laintiff cannot attempt to create an issue of fact by filing a "sham affidavit", that is, one that contradicts

4

Civil No. 15-1608 (GAG)

prior deposition testimony." Rivera-Rocca v. RG Mortgage Corp., 535 F. Supp. 2d 276, 286, n.5 (D.P.R. 2008) (citing Colburn v. Parker, 429 F.3d 325, 332 (1st Cir. 2005)).

The timing of the sworn statement—signed the same month[1] Plaintiff filed its opposition to Defendant's motion for summary judgment was filed—also weights in favor of Defendant's contention that said sworn statement constitutes inappropriate attempt to manufacture issues of fact and should be stricken. Escribano-Reyes, 817 F.3d at 387 (citing Orta–Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 & n.2 (1st Cir. 2006) ("[T]he Statement was executed only after [the defendant] had filed its motion for summary judgment, thus suggesting that the Statement was made solely to create an issue of fact for the purpose of surviving summary judgment," Id. at 110.)

## III.    Relevant Facts and Procedural Background

Plaintiff S.R.M. auditioned and was admitted to the Choir in 2005.  (Docket Nos. 19 ¶ 15; 33 ¶ 15.)  The Choir is an institution dedicated to educating students in the areas of music, signing and choir practice that has been recognized as one of Puerto Rico's most prestigious musical and cultural organizations.  (Docket Nos. 19 ¶ 1; 33 ¶ 1.)  On February 2007, while Plaintiff S.R.M. was at her second year of Preparatory level, the Choir sent her a letter notifying the specific requirements to advance to Elementary level.  (Docket No. 19 ¶ 17.)  In the letter, Plaintiff S.R.M. was advised to improve her performance in certain core curriculum areas and was further warned that if she did not progress, then she would be expelled from the institution.  Id.  Matos-Rivera, Plaintiff S.R.M.'s mother, does not recall this event.  (Docket No. 33 ¶ 17.)  Although longer than usually programmed by the Choir, Plaintiff S.R.M. advanced to Elementary level after taking

---

[1] The sworn statement was signed April 2015; it does not state the actual day it was signed.

Civil No. 15-1608 (GAG)

summer courses in 2008.  (Docket No. 19 ¶ 20.)  On August 15, 2008, at the beginning of the school year, Plaintiff S.R.M. was put on disciplinary probation because she was not concentrating in her Choir work, and although her technical skills had improved, they were not as expected under the institution's standards.  (Docket Nos. 19 ¶ 22; 33 ¶ 22.)  During the first semester of the 2009-2010 academic year, Plaintiff S.R.M. remained in Elementary level and received two deficiency reports for poor execution in two core curriculum courses.  (Docket Nos. 19 ¶¶ 23; 25-26; 33 ¶¶ 23; 25-26.)  Nonetheless, on April 2, 2010, she was informed that she would be given a chance to stay in the Choir subject to improving her grades and passing to a higher group within Elementary level. (Docket Nos. 19 ¶ 29; 33 ¶ 29.)

During the second semester of 2009-2010 school year, Matos-Rivera certified to the Choir that Plaintiff S.R.M. had been diagnosed with Attention Deficit Hyperactive Disorder (ADHD). (Docket No. 19 ¶ 27.)  As evidence of the diagnosis, Matos-Rivera provided a medical certificate, dated 2008.  Id.  Accordingly, the Choir gave Plaintiff S.R.M. additional time to complete tests, and to be seated in the front of the classroom closer to the teacher and the blackboard.[2]  Id.

---

[2] Plaintiffs deny the dates in which the ADHD medical certificate was tendered to the Choir, and contend that it was handed in 2008, as evidenced by the institution's official files.  (Docket No. 33 ¶ 27.)  Contrarily, Defendant replied that the Choir insisted that it needed additional information to learn what Plaintiff S.R.M.'s limitations were and what specific accommodations were needed.  (Docket No. 19 ¶ 28.)  Plaintiffs' objection to this statement does not cite record evidence, therefore it is not properly denied.  Thus, the Court disregards this "statement of fact not supported by a specific citation to record material properly considered on summary judgment."  See L. Cv. R. 56(e) (D.P.R. 2009).  Defendant's Statement of Uncontested Facts at paragraph 27 is deemed admitted.

On the other hand, allegedly, Plaintiff S.R.M.'s "parents failed to provide the Choir any medical documentation between 2010 and January 2014."  (Docket No. 19 ¶ 28.)  Likewise, Plaintiffs deny this statement and argue that they "submitted medical evidence when requested."  (Docket No. 33 ¶ 28.) .)  Plaintiffs' objection to this statement does not cite record evidence, therefore it is not properly denied.  Thus, the Court disregards it because, as Defendant correctly posits, "[p]laintiff cannot attempt to create an issue of fact by filing a "sham affidavit", that is, one that contradicts prior deposition testimony."  Rivera-Rocca v. RG Mortgage Corp., 535 F. Supp. 2d 276, 286, n. 5 (D.P.R. 2008) (citing Colburn v. Parker, 429 F.3d 325, 332 (1st Cir. 2005); see also L. Cv. R. 56(e) (D.P.R. 2009).  Thus, the Court also disregards this opposition and deems Defendant's Statement of Uncontested Facts at paragraph 27, admitted.

6

Civil No. 15-1608 (GAG)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

        In the following school years, several academic and disciplinary incidents took place. At the beginning of the 2010-2011 academic year, Plaintiff S.R.M. received two deficiency reports as she continued a poor academic performance in her Music Theory class and for being too talkative in another course.  (Docket No. 19 ¶¶ 31-32.)  Although admitting to having received the disciplinary report, Plaintiffs contend that punishing this behavior was "one of the forms of mistreatment against [Plaintiff S.R.M.] by the Choir." (Docket No. 33 ¶ 32.)[3]  By February 8, 2011, Rodríguez-Negrón and Matos-Rivera met with the Choir officials to discuss Plaintiff S.R.M.'s ADHD diagnosis and academic progress in general.  (Docket No. 19 ¶ 34.)  In this meeting, the Choir warned them that Plaintiff S.R.M. continued to show deficiency in Music Theory proficiency and if this continued, then she would not be passed to the next group within Elementary Level.  Id.[4]

        On August 10, 2012, Plaintiff S.R.M. received a deficiency report for of interest and compromise with the classes during first week of classes for the 2012-2013 school year.  (Docket No. 19 ¶¶ 44-45; 33 ¶¶ 44-45.)  According to a professor, she was distracted in class talking to other students, had not brought her materials on three occasions, had failed to hand in her homework and had not studied enough for tests.  Id. On February 13, 2013, the Choir denied Plaintiff S.R.M.'s scholarship application because of her deficient grades and discipline.  Id. ¶ 48.  On May 18, 2013,

_____

    [3] Plaintiffs' objection to this statement does not cite record evidence, therefore it is not properly denied. Thus, the Court disregards it and deems Defendant's Statement of Uncontested Facts at paragraphs 31-32, admitted. See L. Cv. R. 56(e) (D.P.R. 2009).

    [4] At the beginning of the 2011-2012 academic year, the Choir denied Plaintiff S.R.M.'s scholarship application due to her prior record of deficient proficiency and artistic skills and for falling behind in the Choir's levels in comparison to students of her age. (Docket No. 19 ¶ 37.)  Similarly, on September 15 and October 11, 2011 Plaintiff S.R.M. received two additional deficiency report provided that she had not been performing at the level expected and professors noticed a marked decline in her discipline and attitude towards certain classes.  Id. ¶¶ 37-38.  On October 20, 2011 a meeting was held with Plaintiff S.R.M.'s parents which was centered on the fact that she seemed disinterested in her Choir studies and was not advancing through the levels as expected. Id. ¶ 40. The parents agreed to hire a tutor.  Id.  On January 13, 2012 another meeting was held with Rodríguez-Negrón and Matos-Rivera, where the Choir administration determined to pass Plaintiff S.R.M. to the next group within Elementary level, conditioned to a promise that she would study and practice harder and obtain excellent grades during the semester.  Id. ¶ 41.  On May 24, 2012, the Choir decided that as the result of the improvement in Plaintiff S.R.M.'s grades she would be passed to Intermediate Level.  Id. ¶ 42.

**Civil No. 15-1608 (GAG)**

Plaintiff S.R.M. received her grades for the second semester, which were her poorest grades since being admitted in the Choir.  Id. ¶ 49.

On August 15, 2013, commencing the 2013-2014 school year, Plaintiff S.R.M. and her parents met with academic coordinator, Rodrigo Correa-Salas.  (Docket No. 19 ¶ 52.)  During the meeting, he warned them that Plaintiff S.R.M. was expected to master all the material in her Intermediate Level classes and achieve the expectations set forth for this level in all her evaluations.  Id.  If those expectations were achieved, she would then be allowed to pass to the next group within Intermediate Level; otherwise, she would be expelled from the Choir.  Id.  Correa-Salas suggested that they consider enrolling Plaintiff S.R.M. in another choir or similar institution where the requirements and workload where not as tough and demanding as the Choir.  Id.  On October 10, 2013, another meeting was held between the Choir's Director, faculty members and Rodríguez-Negrón and Matos-Rivera to inform them that Plaintiff S.R.M. was not achieving the agreed upon performance expectations.  Id. ¶ 55.  Plaintiffs deny the explanations given by the Choir as to why she was not performing as expected.  (Docket No. 33 ¶ 55.)  Two weeks later, Plaintiff S.R.M. received a deficiency report for her poor grades and performance in seven (7) areas.  (Docket No. 19 ¶ 56.)

Also during the 2013-2014 school year, Plaintiff S.R.M. attended tutoring sessions, up to three times a week, offered by her Choir teacher, Merle Rodríguez.  (Docket No. 19 ¶ 57.)  When said tutoring ended on the first week of December, Matos-Rivera informed the Choir that her daughter was being reevaluated for her ADHD condition and told the Choir's official that Plaintiff S.R.M. had also been taking piano lessons and music-therapy with a private instructor and private singing lessons.  Id.  Defendant sustain that the first time that Ms. Rodríguez-Matos's parents informed that they would submit the requested medical information was in November of 2013 when

Civil No. 15-1608 (GAG)

"Ms. Rodríguez's dismissal from the Choir was imminent based on her demonstrated pattern of poor performance." (Docket No. 19 ¶ 59.)[5]

On January 13, 2014, Plaintiff S.R.M. was expelled from the Choir. (Docket No. 19 ¶ 60.) The Choir's Director and two faculty members met with Plaintiffs to inform them that she did not meet requirements to pass to the next level within Intermediate Level. Id. During this meeting, Matos-Rivera handed in a report from a Life Coach at *Centro de Crecimiento Familiar Gaviota* indicating that her daughter had ADHD and required several accommodations. Id. Consequently, she requested the Choir to extend Plaintiff S.R.M.'s probationary status until May 2014. Id. Another issue addressed at this meeting was co-plaintiff Matos-Rivera's inquiry as to why the Choir had not counted a grade of 100% that Plaintiff S.R.M. had obtained in a test. Id. ¶ 61. Defendant clarifies that given that this test was completed by Plaintiff S.R.M. in a tutoring session and did not reflect her knowledge of the material covered. Id. [6] Furthermore, Matos-Rivera asserts that the Choir "had changed their version regarding the test three times." Id. Notwithstanding this issue, both parties admit that the Choir agreed to test Plaintiff S.R.M. anew, this time by Correa-Salas, to assess whether she met the minimum requirements to remain in the Choir. (Docket No. 19 ¶ 60; Docket No. 33 ¶ 61.)

Two days after the meeting, Correa-Salas and other faculty members met with Plaintiff S.R.M.'s life coach, Marlene Silva to discuss her ADHD diagnosis. (Docket No. 19 ¶ 63.)

---

[5] Plaintiffs deny this statement of fact and argue that the Choir admitted -through Mr. Correa-Salas- that the institutions indeed "had received the medical evidence in 2008." (Docket No. 33 ¶ 59.) Plaintiffs' objection to this statement does not cite record evidence, therefore it is not properly denied. Thus, the Court disregards, the Court disregards it, and deems Defendant's Statement of Uncontested Facts at paragraph 59, admitted. See L. Cv. R. 56(e) (D.P.R. 2009).

[6] Plaintiffs denied Defendant's explanation for not counting Plaintiff S.R.M.'s test result and hold that the tutor did not give her the answer but only helped her. (Docket No. 33 ¶ 61 Plaintiffs' objection to this statement does not cite record evidence, therefore it is not properly denied. Thus, the Court disregards it, and deems Defendant's Statement of Uncontested Facts at paragraph 61, admitted. See L. Cv. R. 56(e) (D.P.R. 2009).

Civil No. 15-1608 (GAG)

Similarly, Plaintiff S.R.M. was tested by Correa-Salas, yet she was not able to complete the test and thus failed it.  Id. On January 16, 2014, the Choir received a letter from Silva reiterating the specifications that Plaintiff S.R.M. needed to accommodate her ADHD condition.  Id. ¶ 64. Defendant also puts forward that on said date, Rodríguez-Negrón and Matos-Rivera handed for the first time -since requested in 2010- a report prepared by a psychologist discussing Plaintiff S.R.M.'s ADHD diagnosis and her need for accommodations.  Id.[7]

On February 3, 2014, a month after the beginning of the second semester of the 2013-2014 school year, Correa-Salas sent Matos-Rivera letter reaffirming the Choir's decision to expel Plaintiff S.R.M.; yet Rodríguez-Negrón and Matos-Rivera asked for a reconsideration. (Docket No. 19 ¶ 63.)  However, on February 17, 2014, the Choir granted the petition and Plaintiff S.R.M. was readmitted on "probationary status."  Id. ¶ 67.  The readmission was conditioned to the execution of a "Last Chance Agreement and a Collaboration Agreement," where the Choir detailed -in writing- all of the areas in which Plaintiff S.R.M. needed to improve.  (Docket No. 19 ¶ 67.) The Last Chance Agreement specified the material Plaintiff S.R.M. had to master by the end of the semester: (1) obtain an A average grade in all subjects corresponding to Intermediate Level, Group 2; (2) take a test at the end of the semester to evaluate whether she mastered all of the Intermediate Level material, and (3) obtain, at least, a grade of a 95% out of 100% on said test. Id. Moreover, the Last Chance Agreement also stated that Plaintiff S.R.M. would be given extra time to complete all written tests and that this will be her last opportunity to remain in the Choir; any failure to meet the expectations detailed would cause her to be expelled from the Choir in May 2014. Id. On

_____

[7] Plaintiffs contests this statement arguing that "[b]etween 2010 and 2013, the Choir never made any requests regarding a report prepared by a psychologist discussing [Plaintiff S.R.M.'s] ADHD diagnosis." (Docket No. 33 ¶ 64.)  Plaintiffs' objection to this statement is not supported by admissible evidence.  Thus, the Court disregards it. See Rivera-Rocca v. RG Mortgage Corp., 535 F. Supp. 2d 276, 286, n.5 (D.P.R. 2008); Colburn v. Parker, 429 F.3d 325, 332 (1st Cir. 2005). Thus, the Court disregards Plaintiffs' objection and deems Defendant's Statement of Uncontested Facts at paragraph 64, admitted.

**Civil No. 15-1608 (GAG)**

February 19, 2014, the Agreement was signed by Plaintiff S.R.M, Rodríguez-Negrón, Matos-Rivera, and the Choir's Director.  Id. ¶ 69.

On May 12, 2014, Plaintiff S.R.M. received her grades for the second semester of 2014. (Docket No. 19 ¶ 76.)  She did not meet the expectations agreed upon in the Last Chance Agreement.  Id.  On May 21, 2014, the Choir sent a letter to Rodríguez-Negrón and Matos-Rivera stating its decision to dismiss her from the institution.  Id. ¶ 77.  Following this incident, Plaintiff S.R.M. has admitted that there was nothing she could have done that she was not already doing to improve her performance at the Choir.  Id. ¶ 78.

On May 19, 2015, Plaintiffs filed the present suit alleging discrimination based on disability under Title III of ADA, Section 504, Puerto Rico Law No. 44, and Articles 1802 and 1803 of the Puerto Rico Civil Code.  (Docket No. 1.)  As relief, Plaintiffs seek: (1) relief damages, including compensation for their pain and suffering, valued at $700,000; (2) injunctive relief by way of Plaintiff S.R.M.'s reinstatement to the Choir as a member in good standing and to allow her to complete the Choir's educational program, and (3) injunctive relief -in the form of an injunction- against any further discriminatory action against Plaintiff S.R.M. by the Choir.  Id.

On March 7, 2016, Defendant moved for summary judgment.  (Docket No. 18.)  Defendant mainly argues that: (1) Plaintiffs cannot seek damages under the ADA; (2) Section 504 was inapplicable to this suit, and (3) they had fail to establish a *prima facie* showing of the Choir's failure to make a reasonable accommodation under ADA.  Id.

Plaintiffs oppose sustaining that, although ADA did not provide for a claim in damages, under Puerto Rico's tort statute they were entitled to a monetary compensation, and that Section 504 applies to this case because the Choir allegedly receives federal funds from the National Endowments for the Arts ("NEA").  (Docket No. 32.)  Following these motions, a reply and sur-

Civil No. 15-1608 (GAG)

reply brief were filed. (Docket Nos. 44; 49.)  Finally, on February 27, 2017, the Court petitioned the parties to file a brief addressing the relief sought under ADA and the potential issue of mootness of this cause of action.  (Docket No. 54.)  On March 3, 2017, the parties filed simultaneous briefs discussing the issue. (Docket Nos. 55; 56.)

After reviewing the parties' submissions and the pertinent law, the Court **GRANTS** Defendant's motion for summary judgment.  (Docket No. 18.)

IV.    **Discussion**

   A.    Section 504 of the Rehabilitation Act of 1973

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).  To prevail on a Section 504 discrimination claim, a plaintiff must show that he or she: (1) is a qualified individual with a disability; (2) was "otherwise qualified" to participate, and (3) was denied participation "solely by reason of [his or her] . . . disability," and (4) sought to participate in a federally-funded program or activity.  Lesley v. Hee Man Chie, 250 F.3d 47, 52–53 (1st Cir. 2001) (citing 29 U.S.C. § 794(a)); see also Rivera-Concepción v. Puerto Rico, 786 F. Supp. 2d 489, 500 (D.P.R. 2011).  The fourth part of the test is an additional and specific requirement in the Rehabilitation Act, compared to those needed to establish a *prima facie* case under Tittle III of ADA.  Rivera–Flores v. Puerto Rico Tel. Co., 64 F.3d 742 (1st Cir. 1995).  As to the remaining requirements, it is well-established that Section 504 of the Rehabilitation Act "is interpreted substantially identically to the ADA."  Katz v. City Metal Co., Inc., 87 F.3d 26, 31 n.4 (1st Cir. 1996);  see also E.E.O.C. v. Amego, Inc., 110 F.3d 135, 143 (1st Cir. 1997).

Civil No. 15-1608 (GAG)

1      In addition, with regard to causes of action brought pursuant to the Rehabilitation Act, in

2 educational settings, the First Circuit has stated that "an academic institution can be expected to

3 respond only to what it knows (or is chargeable with knowing)." Wynne v. Tufts Univ. Sch. of

4 Med., 976 F.2d 791, 795 (1st Cir.1992). "This means, that 'to be liable under the Rehabilitation

5 Act, [the institution] must know or be reasonably expected to know of [a student's] handicap.'" Id.;

6 see also Panzardi-Santiago v. Univ. of Puerto Rico, 200 F. Supp. 2d 1, 16 (D.P.R. 2002). Moreover,

7 if the requested accommodations call for "substantial modifications" of the educational institution's

8 program, then the accommodations are not reasonable and will not be required. See Southeastern

9 Community College v. Davis, 442 U.S. 397, 405 (1979) ("Section 504 [of the Rehabilitation Act]

10 by its terms does not compel educational institutions to disregard the disabilities of handicapped

11 individuals or to make substantial modifications in their programs to allow disabled persons to

12 participate."); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 152 (1st Cir. 1998); Wynne, 976

13 F.2d at 794–95 (medical school was not required to make accommodations for learning disabled

14 student where such accommodations would substantially alter the program or lower academic

15 standards).

16      As a threshold manner, the Court will first address Plaintiffs' requirement to show that the

17 Choir, the educational institution from which Plaintiff S.R.M. has been allegedly denied

18 participation, actually receives federal financial assistance.

19      In their Opposition, Plaintiffs argue that although "they do not have access to the Institution

20 financial books, as individuals with close ties to the Choir for almost nine years, they do have some

21 personal knowledge of the [National Endowment for the Arts]'s role in the Choir's funding."

22 (Docket No. 32 at 14.) Their argument is two-fold. First, Plaintiffs hold that the Choir's

23 "educational and promotional materials and history consistently state that it is funded by the NEA"

24

Civil No. 15-1608 (GAG)

and this shows that the Choir "is or should be an organization receiving funds from the NEA." Id. To support this assertion, Plaintiffs presented a local newspaper cut-out of the Choir's promotional advertisement. Id. at 15; (Docket Nos. 33-1; 33-2.)  Secondly, Plaintiffs also posit that among the Choir's duties as alleged NEA funding grantees, according to "General Terms & Conditions for Grants and Cooperative Agreements to Organizations," it has to acknowledge their relationship through a required "prominent display" of the NEA logo. Id.  Accordingly, they submit that "from such mandate . . . an organization *not* receiving funding from the NEA would not, or at least *should not,* use the NEA logo." Id.  Moreover, Plaintiffs sustain that "all artistic organizations receiving funds from the NEA are bound, by [these] Terms and Conditions, to comply with Section 504 and all other federal anti-discrimination laws." Id. at 15.  To support this contention, Plaintiffs submit the NEA's General Terms and Conditions.  (Docket Nos. 33-3; 33-4.)

Defendant opposes arguing that Plaintiffs have no access to the Choir's financial books, nor have they ever requested access.  (Docket No. 44 at 5.)  It also reiterates that they have not submitted admissible evidence contradicting the fact that the Choir receives part of its funds through the *Instituto de Cultura Puertorriqueña's* ("ICP") Support of the Arts Program, which in turn, obtains funding from the National Endowment for the Arts ("NEA").  Id.  Similarly, Defendant condemns Plaintiffs' "bizarre tactic" of presenting NEA's "General Terms and Conditions," a document that has not been duly submitted nor authenticated pursuant to the Federal Rules of Evidence.  Id.

Plaintiffs assertion that the Choir is a federally funded institution is conclusive, speculative and insufficient.  Once a properly supported motion has been presented, the opposing party "has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  For issues where the opposing party "bears the ultimate burden of proof,

Civil No. 15-1608 (GAG)

that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute."  See Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Colón-Pérez v. Dep't of Health of Puerto Rico, 623 F. Supp. 2d 230, 238 (D. P.R. 2009).  In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor."  Griggs–Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Nevertheless, the Court may safely ignore, "conclusory allegations, improbable inferences, and unsupported speculation."  Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Simply put, the record is devoid of evidence to support the allegations that the Choir is a federally funded institution.[8]  As a result of the lack of evidence required to meet the "federally-funded program or activity" prong, Plaintiffs' Section 504 claim fails and shall be dismissed.[9]  For the reasons stated above, the Court **GRANTS** summary judgment as to Plaintiffs' Section 504 claim and **DISMISSES with prejudice** Plaintiffs' Section 504 claim.

---

[8] Similarly, the exhibits attached to Plaintiffs' motion to support this proposition (the Choir's promotional advertisement, the local newspaper cut-out and the alleged NEA's General Terms and Conditions) would be inadmissible at trial for lack of proper authentication. "Generally speaking, evidence must be admissible at trial in order to be considered on summary judgment." Garside v. Osco Drug, Inc., 895 F.2d 46, 49-51 (1st Cir. 1990). It is well-settled that "[e]ach document submitted in support of summary judgment must either be properly authenticated, or must be self-authenticating under the Federal Rules. Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000). Plaintiffs' exhibits have not been properly authenticated and nor do they fall within the category of self-authenticating documents.

[9] Moreover, the Court finds that Rodríguez-Negrón and Matos-Rivera's utter disregard to keep Defendant constantly informed about Plaintiff S.R.M.'s ADHD progression, or lack thereof, combined with the fact that the requested accommodations possibly calls for "substantial modifications" of the Choir's program, Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 152 (1st Cir. 1998), further weakens their arguments under Section 504.

Civil No. 15-1608 (GAG)

B. <u>Title III of the American with Disabilities Act of 1990</u>

To make out a *prima facie* case under Title III, a plaintiff must prove (1) that he or she has a disability as defined under the ADA; (2) that the defendant's office is a private entity that owns, leases, or operates a place of public accommodation; (3) that he or she requested a reasonable modification of defendant's policies or procedures to allow him or her access to the public accommodation, and (4) that the defendant failed to make reasonable modifications that would accommodate his or her disability without fundamentally altering the nature of the public accommodation. <u>See</u> 42 U.S.C. § 12182(a), (b)(2)(A)(ii); <u>see also</u> <u>Sanchez v. ACAA</u>, 247 F. Supp. 2d 61, 67 (D.P.R. 2003).

On February 27, 2017, the Court ordered the parties to file a simultaneous brief addressing Plaintiffs' proposed relief under ADA.  Specifically, they had to address the potential mootness of the issue at bar, given the fact that Plaintiff S.R.M. is currently seventeen (17) years old and in her last semester of high school.  (Docket No. 19 ¶ 14.)  In their complaint, Plaintiffs requests the Court to issue injunctive relief as provided ADA and to reinstate Plaintiff S.R.M. to the Choir.  (Docket No. 1.)  Generally, the Choir teaches students up to eighteen (18) years of age.  (Docket No. 54.)

It well-settled that mootness "is a ground which should ordinarily be decided in advance of any determination on the merits."  <u>See</u> <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 67 (1997).  The First Circuit, employing the Supreme Court's terminology, has provided various formulations of what makes a case moot.  <u>See</u> <u>Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops</u>, 705 F.3d 44, 52 (1st Cir. 2013). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  <u>D.H.L. Assocs., Inc. v. O'Gorman</u>, 199 F.3d 50, 54 (1st Cir. 1999) (quoting <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969)) (internal quotation marks omitted). "Another way of

Civil No. 15-1608 (GAG)

putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially

prevailing party." Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004)

(citing Church of Scientology of Cal. v. United States, 506 U.S. 9 (1992)).   Additionally, "[i]f

events have transpired to render a court opinion merely advisory, Article III considerations require

dismissal of the case." Mangual v. Rotger–Sabat, 317 F.3d 45, 60 (1st Cir. 2003).

The rationale for the mootness doctrine "is predicated on judicial economy-saving the use

of the [C]ourt's scarce resources for the resolution of real disputes." Thomas R.W., By & Through

Pamela R. v. Massachusetts Dep't of Educ., 130 F.3d 477, 479–80 (1st Cir. 1997).  To avoid the

relitigation of an otherwise moot question, however, the mootness doctrine countenances an

exception for issues "capable of repetition, yet evading review." Roe v. Wade, 410 U.S. 113, 125

(1973).  To preserve a case from mootness under this exception, two requirements must be met:

"(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or

expiration, and (2) there was a reasonable expectation that the same complaining party would be

subjected to the same action again." Pallazola v. Rucker, 797 F.2d 1116, 1129 (1st Cir. 1986)

(quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).  The possibility that other parties may

subsequently bring a similar claim does not save a case from mootness.  Lane v. Williams, 455 U.S.

624, 634 (1982).

Addressing this issue, Plaintiffs concede "that their request for injunctive relief under the

ADA is potentially moot" yet hold that "it is possible that the challenged conduct may arise in the

future, with other members of the Choir."  (Docket No. 55 at 5.)  Defendant posits that "the relief

of reinstatement sought by Plaintiffs under ADA should be denied as moot." (Docket No. 56 at 2.)

Moreover, Defendant points out that even if Plaintiffs' claim of discrimination under the ADA

prevails "there would not be any available remedy for Plaintiffs, since [Plaintiff S.R.M.] would not

Civil No. 15-1608 (GAG)

be eligible to be readmitted to the Choir on August of this year . . . much less be able to complete the Choir levels still pending for her, as this would take her approximately 3 to 4 more years, assuming she does not have any further setbacks."  (Docket No. 56 at 3.)

The Court rejects Plaintiffs' submission that the "capable-of-repetition, yet evading review" exception applies to the case at hand.  This exception "is not a juju, capable of dispelling mootness by mere invocation." Oakville Development Corp. v. F.D.I.C., 986 F.2d 611, 615 (1st Cir. 1993). It is a doctrine that applies "only in exceptional situations." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983).  Furthermore, the "capable-of-repetition, yet evading review" exception, as already noted, applies only if the claim of the very same litigant will evade review. Id. at 103.  It is not sufficient that other, similarly situated and potential litigants, for example other Choir students that might suffer from an alleged discrimination, will face the same issue. See Méndez-Soto v. Rodríguez, 334 F. Supp. 2d 62, 69 (D.P.R. 2004), aff'd, 448 F.3d 12 (1st Cir. 2006).  Consequently, Plaintiffs' remedy seeking Plaintiff S.R.M.'s reinstatement to the Choir is not available, and therefore their ADA claim fails.  The Court needs not address any determination on the merits of Plaintiffs' ADA claim.  See Arizonans for Official English, 520 U.S. at 67.  For the reasons stated above, the Court **GRANTS** summary judgment as to Plaintiffs' ADA claims and **DISMISSES with prejudice** Plaintiffs' ADA claims.

C.  Supplemental Jurisdiction

In this case, Plaintiffs' state and federal claims both arise from the same incident, thus the operative facts are identical. Cf. Szendrey-Ramos v. First Bancorp, 512 F. Supp. 2d 81, 86 (D.P.R. 2007) (declining to exercise supplemental jurisdiction when the Puerto Rico law claims are distinct, each has its own elements of proof not necessary to establish the federal claim, and outnumbered federal claims).

Civil No. 15-1608 (GAG)

In cases where plaintiffs' federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. See Rodríguez Cirilo v. García, 908 F.Supp. 85, 92 (D.P.R. 1995) ("The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. If federal law claims are dismissed before trial, however, the state law claims should also be dismissed.") (citations omitted). Therefore, in the interest of judicial economy and fairness, the Court will exercise supplemental jurisdiction over Plaintiffs' state law claims.

      *a.   Puerto Rico Law No. 44*

Law 44 bans employment discrimination against "persons with any kind of physical, mental or sensory disability." P.R. LAWS ANN. tit. 1, § 504;  see also Cardona Roman v. Univ. of Puerto Rico, 799 F. Supp. 2d 120, 131 (D.P.R. 2011).  It was amended in response to the 1991 ADA amendments, it is meant to be the Puerto Rico counterpart to the ADA and to mirror the ADA's provisions for relief; thus, requires no separate analysis.  Toledo-Colón v. Puerto Rico, 812 F. Supp. 2d 110, 117 (D.P.R. 2011); Otero-Merced v. Preferred Health Inc., 680 F. Supp. 2d 388, 392 (D.P.R. 2010);  see also Ríos Jaimán v. Cidra Mfg. Operations of P.R., Inc., 145 D. P.R. 746, 749 (1998).  The elements of proof for a claim under Law 44 "are essentially the same as those for establishing a claim under the ADA."  Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F. Supp. 2d 151, 175 (D.P.R. 2008); see, e.g., Román Martínez v. Delta Maint. Serv., Inc., 229 F. Supp.2d 79, 85 (D.P.R. 2002); Zayas v. Commonwealth of Puerto Rico, 378 F.Supp.2d 13, 23-24 (D.P.R. 2005).

Civil No. 15-1608 (GAG)

The Court already denied Plaintiffs' ADA claim under the mootness doctrine. Consequently, provided that Law 44 requires no separate analysis to that of ADA and mirrors its provisions for relief —that a plaintiff cannot seek to recover damages— then this claim has also turned moot.  Thus, the Court **GRANTS** Defendant's summary judgment as to Plaintiffs' Law 44 claim.

> b.  *1802 & 1803 claims*

Pursuant to Article 1802, "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done . . . ."  Tit. 31, § 5141. Plaintiffs must show negligent acts, damages, and a causal link between the negligent acts and damages.  Gierbolini-Rosa v. Banco Popular De P.R., 121 F.3d 695 (1st Cir. 1997).

The undersigned has dismissed all federal claims against the moving Plaintiffs, and none of the possible reliefs sought under the invoked federal laws provide for any sort of damages compensation,  Plaintiffs has not set forth independent grounds for a tort claim. As such, Plaintiffs are barred from bringing claims under Articles 1802 and 1803 because the conduct Plaintiffs allege is based on the same facts that give rise to Plaintiffs' causes of action under Title III of ADA, Section 504 of the Rehabilitation Act and Puerto Rico's Law 44.  Reyes–Ortiz v. McConnell Valdes, 714 F.Supp.2d 234, 239 (D.P.R. 2010) (citations omitted); Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1 (P.R. 1994). 239; see also  Pérez-Maspons v. Stewart Title Puerto Rico, Inc., No. 14-1636 (GAG), 2016 WL 4940205, at *18 (D.P.R. 2016).

Accordingly, the Court **GRANTS** Defendant's summary judgment as to Plaintiffs' Article 1802 and 1803 claims and **DISMISSES with prejudice** Plaintiffs' Article 1802 and 1803 claims.

Civil No. 15-1608 (GAG)

**V.      Conclusion**

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment at Docket No. 18 and **DISMISSES with prejudice** Plaintiffs' claims.

**SO ORDERED.**

In San Juan, Puerto Rico this 24th day of March, 2017.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge

21